UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MATTHEW URONIS,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:19-1557** |
| v. | : | |
| | : | **(JUDGE MANNION)** |
| **CABOT OIL & GAS CORP. and GASSEARCH DRILLING SERVICES CORP.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is a motion to dismiss filed by the defendants Cabot Oil & Gas Corporation ("Cabot") and GasSearch Drilling Services Corporation ("GDS"), (collectively, "Defendants"). (Doc. 18). For the reasons set forth below, Defendants' motion to dismiss will be **GRANTED** and the Amended Complaint, (Doc. 13), will be **DISMISSED**.

### I.   BACKGROUND

The plaintiff Matthew Uronis, for himself and on behalf of those similarly situated, initiated this action on September 19, 2019. (Doc. 1). On October 13, 2019, Uronis filed an Amended Complaint. (Doc. 13). Uronis alleges he was an employee of both Carrie's Transport & Rental ("Carrie's") and Cabot. Carrie's is a company that hires individuals to perform

vacuuming and related services on well sites operated by Cabot. GDS is a subsidiary of Cabot that provides "dirt construction, water hauling, trucking, and roustabout services" on oil and gas sites in Pennsylvania. (Doc. 13, at 7).

Uronis alleges he applied for a job at GDS in August of 2019 and that he was more qualified than other applicants. However, Uronis alleges he was notified he would not be hired on August 28, 2019, due to this status as a putative member of a collective action against Cabot and others under the Fair Labor Standards Act ("FLSA") in *Messenger v. Cabot Oil & Gas*, 3:19-308 (M.D.Pa.). More particularly, Uronis alleges he was not hired and thus retaliated against because Defendants anticipated his testimony and participation in *Messenger*.

In the *Messenger* action, it is alleged that Carrie's hired the plaintiff Michael Messenger to perform vacuuming and related services on well sites operated by Cabot. Messenger alleges he and others were denied overtime compensation in violation of federal and state law and that Cabot is liable for any improperly withheld overtime compensation as a joint-employer.

In support of his claims, Uronis points to the following text message he received from a GDS manager:

> Unfortunately I found out the day after I talked to you that no one who worked for Herb is supposed to be on a Cabot location. Pretty much because of the lawsuit that's going on. I know you're a worker but I can't do anything to get you into gds.
>
> …
>
> I went to my bosses['] boss and tried but we can't. Maybe once the lawsuit deal dies out it might be a possibility again. I wish I could get you in, believe me you'd be better than some of the guys we've been interviewing. Also turning a lot down for the same reasons.

(Doc. 13, at 9). As a result, Uronis alleges one count of retaliation in violation of Section 15 of the FLSA, 29 U.S.C. §215(a)(3).

Defendants filed the present motion December 23, 2019, (Doc. 18), as well as a brief in support, (Doc. 19). Uronis filed a brief in opposition on January 15, 2020. (Doc. 21). Defendants filed a reply brief on January 29, 2020. (Doc. 22).

## II.   STANDARD

Defendants' motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. In deciding a defendant's motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded,

- 3 -

material allegations in the complaint must be taken as true. *Estelle v. Gamble*, 429 U.S. 97 (1976). However, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004). The court also need not accept legal conclusions set forth as factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

In deciding a motion to dismiss, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which the plaintiff has identified as the basis of his claim. *See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Additionally, the court should generally grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III. DISCUSSION

Initially, Defendants argue that this action must be dismissed as to GDS because Uronis has not and cannot set forth facts that establish or infer that GDS was ever an employer of Uronis. This is significant because, according to Defendants, case law is clear that a prospective employee cannot maintain a FLSA retaliation claim against a prospective employer.

Although case law indeed suggests that a job applicant cannot bring an FLSA claim for retaliation against a prospective employer,[1] and thus that, at a minimum, Uronis's claims against GDS should be dismissed, the court need not engage the issue since the court's ruling on Defendants' next argument is dispositive with respect to both GDS and Cabot.

---

[1] It is significant that Uronis has not identified any case in which a court has directly held that a job applicant can succeed in bringing a retaliation claim under the FLSA against a prospective employer. Conversely, Defendants have identified numerous cases that stand for the contrary proposition. *Delligner v. Science Applications Int'l Corp.*, 649 F.3d 226, 228-29 (4th Cir. 2011) (holding Section 15(a)(3) protects only employees and Section 16(b) provides that such employees—and not job applicants—may sue only their employer); *Parker v. City House Hostels*, No. 17-2540, 2017 WL 5641217, at *1 (E.D.Pa. Nov. 22, 2017) (FLSA does not permit prospective employees to bring retaliation claims against prospective employers); *Saini v. Motion Recruitment Partners, LLC*, No. 16-1534, 2017 WL 1536276, at * (C.D.Ca. Mar. 6, 2017) ("The few courts to consider the issue have uniformly held that job applicants are not employees under the FLSA."). *See also Liscomb v. Boyce*, 954 F.3d 1151, 1154-55 (8th Cir. 2020) (adopting *Dellinger*'s reasoning).

Defendants next argue that the case must be dismissed as to both Defendants because (1) Uronis cannot show he engaged in a protected activity; (2) Uronis cannot show that his employer took adverse action against him either contemporaneously with, or subsequent to, the protected activity; and (3) Uronis cannot show a causal connection between the protected activity and adverse action because he asserted no factual allegations to support the notion that Defendants were aware Uronis was about to file his consent to join.

With respect to the first aspect of their argument, Defendants contend that Uronis did not engage in any protected activity recognized by the FLSA. Under Section 15, an employee has engaged in recognizable "protected activity" if (1) he "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter," or (2) "has testified or is about to testify in any such proceeding." 29 U.S.C. §215(a)(3). Defendants observe that Uronis claims he engaged in a protected activity, first, through "his status as a putative collective member in the Messenger Action" and, second, through "his status as a witness about to testify in the Messenger Action." (Doc. 13, at 13).

Defendants, however, assert that a person's mere status as a putative class member in a yet-to-be certified collective action is not legally-

recognized protected activity under the FLSA. Under the FLSA, "No employee shall be a party plaintiff to any such [FLSA] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. §216(b). Thus, Defendants note that a putative collective action member is not a party until he affirmatively opts into the suit. Here, Defendants emphasize that the *Messenger* action has yet to be certified and Uronis had not opted-in the *Messenger* action at the time of the alleged retaliation. Significantly, Defendants note that Uronis had not entered his consent to join the *Messenger* action until September 9, 2019, (Doc. 13, at 8 ), which was nine days *after* he was allegedly retaliated against, (Doc. 13, at 9).

Uronis also alleges he engaged in a protected activity via "his status as a witness about to testify in the Messenger Action." (Doc. 19, at 19). However, Defendants argue that Uronis failed to set forth actual facts to plausibly establish that he was "about to testify." Defendants note that while few courts have had occasion to interpret this phrase, a district court in the Eastern District of Virginia, later affirmed by the Fourth Circuit, held that "about," in accordance with the Black's Law Dictionary definition, meant "something that, while not necessarily imminent, is at least relatively certain and near in time." *Ball v. Memphis Bar-B-Q Co.*, 34 F.Supp.2d 342, 345

(E.D.Va.1999), *aff'd*, 228 F.3d 360 (4th Cir. 2000). Thus, *Ball* stated that the phrase "about to testify" meant "an individual . . . is scheduled to testify in a then-pending FLSA proceeding." *Id.*

In the present case, Defendants argue that Uronis's allegations, even when accepted as true, do not plausibly or demonstrate or suggest that he was "on the verge of testifying" or that his testimony was "relatively certain to occur" or "near in time." Defendants note that there were no allegations that Uronis was subpoenaed or scheduled to testify, told that he would be called upon to testify, or that he told anyone that he was planning to testify.

The FLSA's anti-retaliation provision states:

> [I]t shall be unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. §215(a)(3).

To succeed on a retaliation claim under the FLSA, a plaintiff must prove that (1) he engaged in an activity protected by the act; (2) defendants responded with retaliation; and (3) the protected activity was the cause of

- 8 -

the defendants' retaliation. *Balik v. City of Bayonne*, 567 Fed.App'x 86, 89 (3d Cir. 2014).

Here, the court agrees with Defendants and finds that Uronis has failed to state a claim upon which relief can be granted because he failed to allege that he and those similarly situated to him engaged in protected activity. Put simply, there is no legal support for the notion that one's mere status as a putative collective action member or the speculative possibility that one may be called to testify in an FLSA action that he has not yet opted into constitutes the type of affirmative action Section 15 demands with respect to protected activity.

As to his first contention, although it is not particularly clear whether Uronis intended to do so, to the extent he alleges that his status as a collective member alone is a protected activity, the court disagrees.[2] As another district court observed,

> Putative class members, unlike named plaintiffs or even opt-in plaintiffs, cannot be said to have filed a complaint or instituted any proceeding. Nor can they be said to have taken an action which would provide notice of a complaint to

---

[2] In his Amended Complaint, Uronis states that "the reason he would not be hired by GDS was solely because of his status as a putative collective member in the Messenger Action," (Doc. 13, at 9), but in his brief in opposition states he "does not allege that status as a putative collective member, alone is sufficient." (Doc. 21, at 21).

- 9 -

> their employer. Indeed, putative class members often are not aware of their status as such, especially prior to the issuance of notice. By definition, a protected activity requires some form of affirmative act protected by the statute that provides fair notice to the employer.

Stephenson v. TCC Wireless, LLC, No. 17-cv-7258, 2018 WL 888759, at *2 (N.D.Ill. Feb. 14, 2018). Thus, Uronis has "failed to establish that potential membership in a putative class satisfies this requirement, and accordingly fails to state a claim for FLSA retaliation." Id.

As to Uronis's contention that he or those similarly situated to him were "about the testify," as the court in Ball aptly observed, the term "about" "refers to something that, while not necessarily imminent, is at least relatively certain and near in time." Ball, 34 F.Supp.2d at 345 (quoting Black's Law Dictionary 7 (5th ed.1979) (defining "about" as "near in time, quantity, number, quality, or degree. Substantially, approximately, almost, or nearly.")). Accordingly, "the unambiguous meaning of this language is that an individual can only receive the benefit of the second clause of §215(a)(3) when [he] has testified in an FLSA proceeding <u>or is scheduled to testify</u> in a then-pending FLSA proceeding." Ball, 34 F.Supp.2d at 345 (emphasis added). Had Congress intended the FLSA retaliation provision to apply to scenarios in which putative collective action members might

potentially testify at some point in the proceeding, it would have said so. Instead, Section 15 uses the phrase "about to testify," suggesting some sense of certainty and immediacy as opposed to mere possibility. 29 U.S.C. §215(a)(3).

In his Amended Complaint, Uronis has alleged no facts whatsoever to support the allegation that he or those similarly situated to him were "about to testify." He has not, for example, alleged that they were subpoenaed to testify or that they were told they would be called upon to testify, nor has he alleged any facts that Defendants had a reason to know that Uronis or any others would be testifying.[3] Significantly, Uronis had not even entered his consent to join until after the purported retaliation occurred.

As numerous courts have explained, it is the employee's <u>assertion</u> of statutory rights that triggers his protected status under the FLSA. *See* Liscomb v. Boyce, 954 F.3d 1151, Love v. RE/MAX of America, Inc., 738 F.2d 383, 387 (10th Cir. 1984) (quoting Brennan v. Maxey's Yamaha, Inc.,

---

[3] Uronis's attempt to cast *Ball*'s holding as "tortured," (Doc. 21, at 23), by citing to the Fourth's Circuit's opinion affirming it is unavailing. Although the Fourth Circuit focused on the necessity that a FLSA proceeding be instituted, nothing in its opinion affirming *Ball* disturbed the district court's holding regarding the interpretation of "about to testify." Ball, 228 F.3d at 364-65. Even if it had, this court would nevertheless employ the dictionary definition of "about" to reach the same conclusion.

- 11 -

513 F.2d 179, 181 (8th Cir. 1975); *E.E.O.C. v. Swift Transp. Co.*, 120 F. Supp.2d 982, 993 (D.Kan. 2000). "The anti-retaliation provision was designed to encourage employees to report suspected wage and hour violations by their employers." *Brock v. Richardson*, 812 F.2d 121, 124 (3d Cir. 1987). "The [Supreme] Court has made clear that the key to interpreting the anti-retaliation provision is the need to prevent employees' fear of economic retaliation for voicing grievances about substandard conditions." *Id.* (internal quotation marks omitted)(emphasis added). Hence, "courts interpreting the anti-retaliation provision have looked to its animating spirit in applying it to activities that might not have been explicitly covered by the language" such as refusing to release back pay claims to employers or communicating with investigators. *Id.* (emphasis added).

Here, even viewing his allegations in the most favorable light, Uronis has not alleged that he or anyone else took any action or engaged in any activity that could be construed as voicing a grievance under the FLSA or making it known to Defendants that they would be testifying in the *Messenger* action. Uronis's allegation that "[u]pon information and belief, [Defendants] were aware that [Uronis] was about to file his consent to join, and was otherwise about to testify in the Messenger action at the time they made the decision to deny [his] application," (Doc. 13, at 10), is nothing

more than a formulaic recitation of the elements of a retaliation claim, which is insufficient to survive a Rule 12(b)(6) motion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Mere restatements of the elements of a claim are not entitled to the assumption of truth." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) (quotation marks omitted and alterations adopted). As a result, Uronis's Amended Complaint has failed to state a claim upon which relief can be granted.

The court's holding today, however, is not to say that the court endorses the sentiments expressed to Uronis by the GDS manager in the text message indicating that Cabot did not want those employed by a company involved in the *Messenger* Action to work on Cabot work sites. "Far from it." Ball, 228 F.3d at 365. Nevertheless, "this moral judgment does not justify a conclusion—contrary to the plain language of the FLSA—that [Uronis]'s [Amended C]omplaint states a cause of action under the Act.". Accordingly, the court finds that dismissal of the action for failure to state a claim is necessary.[4]

---

[4] Having determined that Uronis's claim must be dismissed for his failure to allege he engaged in a protected activity, the court does not reach Defendants' arguments regarding the other elements of his prima facie retaliation case.

IV.     CONCLUSION

For the reasons stated above, the court will **GRANT** Defendants' motion to dismiss, (Doc. 18), and the Amended Complaint, (Doc. 13), will be **DISMISSED**.

An appropriate order will issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: March 31, 2021**
19-1557-01